Gheeií, J.
delivered the opinion of the court.
1. Was Olmstead’s appointment as guardian legal? We think it was. Although Nichol was named guardian as well as executor in the will, that did not make him such; and not having assumed the performance of the duties of guardian, but on the contrary renouncing that character in court, we can.not consider him such because he may have done an act appropriate to the character of guardian.
2. Are the securities liable for Josiah’s part of the estate? We cannot criticise the settlement between the executor and guardian to see if he received" more than his wards were entitled to of the estate. Whatever he received for them he is bound to account for to them. It would be monstrous if a guardian were permitted to contest the title of his wards to the estate he may have received for them in his character of guardian, upon the ground that he had received more than they were entitled to. If Nichol paid to this guardian, for his wards, money which a future administrator of Josiah may be entitled to demand, certainly this guardian is not responsible for it, but Nichol (if any one) would have to answer to such administrator. The question, therefore, whether this share could have been received without an administrator, does not arise. Olmstead received the fund as guardian and is bound to account for it, and his securities are liable to the extent of his obligation.
3. Probably the mor^satisfactory manner of taking the *227 account would have been to have allowed such sums as were properly paid, and for which there were vouchers produced, and where no vouchers existed, to have taken the proof and made such allowance as was reasonable. The decree making the last reference authorized this course; and where no voucher existed for the payment of boarding, proof was made as to what was reasonable, and that sum was allowed. It is true, that for some years the.allowance was small, but the defendant’s answer and the proof show they boarded part of the time where very little was paid. On the other hand the allowances for some of the years’ expenses are extravagantly high, and such as ought not to have been made, had a full allowance been made for each year. The average expense of the lowest is about two hundred and forty dollars per an-num and of highest about three hundred and fifty dollars. This we think an ample allowance; and although strictly some of the details of the account may be erroneous on both sides, we consider that the result does ample justice to the defendant, and therefore will not, for the sake of attaining the same end by a somewhat different process, alter it.
4. The proof does not satisfy us that Perkins and Oim-stead agreed, at the time the draft on the New Orleans house was drawn by them, that Perkins should pay the draft, and that it should go towards discharging the bond Olmstead held, as guardian, on Smith and Perkins. It is very probable Perkins the more readily became bound for Olmstead from the knowledge that he owed him this money; but, unless it was agreed (and we think it was not) that the sum for which the bill was drawn should be a payment of the note, the payment of it afterwards by Perkins could not entitle him to claim a credit on the note for that. sum. Indeed, if he advanced this sum to Olmstead for'his private purposes when he knew he was insolvent, with the agreement that it should be applied in extinguishment of a debt due as trustee, thus enabling him to commit a gross breach of trust, it is difficult to perceive how he could have been excused from liability therefor to the cestue que trust. Let the decree be affirmed.